**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NICOLE M. YOUNG,

> *Plaintiff*,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

> *Defendant*.

No. 25-cv-335 (DLF)

## <u>MEMORANDUM OPINION</u>

Nicole Marie Young brings this suit against the Washington Metropolitan Area Transit Authority (WMATA) alleging that negligence by a WMATA Metrobus driver caused her to suffer injury on August 1, 2022.  Compl. ¶¶ 2, 5, Dkt. 8.  Before the Court is WMATA's Motion for Summary Judgment.  Mot., Dkt. 14.  For the reasons that follow, the Court will deny the motion.

## I.    BACKGROUND

On August 1, 2022, Young boarded a WMATA Metrobus.  Def.'s Statement of Material Facts (SMF) Ex. A (Young Dep. Tr.) 44:7–16, Dkt. 14-3.  She took a seat behind the driver.  *Id.* at 47:14–22; *see generally* Def.'s SMF Ex. B (WMATA Video), Dkt. 14-4.[1]  Prior to the incident, the Metrobus pulled away from a stop and into the furthest right lane of Alabama Avenue.  WMATA Video 07:23:47–07:23:59 (Camera 1); Def.'s SMF ¶ 4, Dkt. 14-2; Pl.'s SMF ¶ 3, Dkt. 15-1.  The Metrobus moved toward the intersection of Alabama Avenue and Naylor Road.  Def.'s SMF ¶¶ 3, 4; Pl.'s SMF ¶ 3.

---

[1] Young does not contest the authenticity of the video from the incident.  WMATA has submitted a declaration from Harold S. Miner, a manager in video operations at WMATA, to support the authenticity of the video.  *See* Decl. of Harold S. Miner, Dkt. 14-5.

Video evidence shows that two other buses in the left-hand lane were obstructing the Metrobus's view of oncoming traffic at the intersection. *See* WMATA Video 07:23:57–07:24:05 (Camera 1); Pl.'s SMF ¶ 4. The Metrobus began to accelerate in the right lane of Alabama Avenue as it approached the intersection with Naylor Road. *See* WMATA Video 07:23:57–07:24:05 (Camera 1); WMATA Video -6:10 to +2:50 (Separate File "XJQL94662"). As the Metrobus entered the intersection, the light was green and there were no vehicles ahead. WMATA Video 07:23:57–07:24:10 (Camera 1); Def.'s SMF ¶ 4. The Metrobus was traveling at 15.4 miles per hour while entering the intersection, below the speed limit of 25 miles per hour. Def.'s SMF ¶ 6; WMATA Video -6:10 to +2:50 (Separate File). In the intersection, the two other buses in the left-hand lane were stopped with a gap between them. WMATA Video 07:23:57–07:24:10 (Camera 1); Def.'s SMF ¶ 7; Pl.'s SMF ¶ 4.

As the Metrobus entered the intersection, an oncoming truck emerged from the space between the two other buses, turning left across oncoming traffic just ahead of the approaching Metrobus. WMATA Video 07:23:57–07:24:10 (Camera 1); Def.'s SMF ¶ 8; Pl.'s SMF ¶ 5. Although the bus driver braked hard enough to avoid a collision with the truck,[2] WMATA Video 07:23:57–07:24:10 (Camera 1); Def.'s SMF ¶ 9, the Metrobus's internal video shows the bus driver and a passenger sitting across from Young lurch forward, WMATA Video 07:24:03–07:24:08 (Cameras 2, 3, 4), and Young tumble forward, *id.* (Cameras 2, 4). Another passenger in the rear of the bus appears to hit his head on a divider in front of him. *Id.* (Cameras 5, 7).

Young alleges that she was "throw[n] . . . from the seat of the bus," Young Dep. Tr. 44:20–21, hit her arm, knee, head, and hand, and ended up on the floor, *id.* at 55:1–56:13; *see* Pl.'s Resp.

---

[2] Young claims the bus driver also swerved, Young Dep. Tr. 44:17-21; Pl.'s SMF ¶ 6, which WMATA denies, Def.'s SMF ¶ 12. The video evidence does not appear to show the bus swerving. WMATA Video 07:23:57–07:24:10 (Cameras 1, 9).

Interrog. No. 8, Dkt. 14-6; WMATA Video 07:24:03–07:24:10 (Cameras 2, 4). The bus driver stopped the Metrobus and called for an ambulance. Pl.'s Resp. Interrog. No. 8. According to Young's recollection, the bus driver also "apologized to [Young] . . . and indicated that he may have been traveling too close" to the truck. Pl.'s Resp. Interrog. No. 11. No testimony has been gathered from the two other passengers or from the bus driver.

In December 2024, Young filed suit against WMATA in the D.C. Superior Court, alleging that the bus driver's negligent driving caused her injuries. Compl. ¶¶ 3–5. WMATA removed the case to this Court, *see* Notice of Removal, Dkt. 1, and moved for summary judgment, *see* Mot.

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

A party opposing summary judgment must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). "A party asserting that a fact cannot be

or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Where, as here, the dispositive question concerns the reasonableness of a driver's conduct, summary judgment is generally disfavored.  *See Stehn v. Cody*, 962 F. Supp. 2d 175, 179 (D.D.C. 2013) ("Issues of negligence . . . are rarely appropriate for summary judgment.").  Summary judgment in such a case is appropriate only where "the facts are undisputed, and conceding every legitimate inference, only one conclusion may be drawn."  *Whiteru v. WMATA*, 25 F.4th 1053, 1058 (D.C. Cir. 2022) (citation modified).  Additionally, where there is authentic, non-disputed video evidence showing the relevant events at issue, the Court should "view[] the facts in the light depicted by the videotape."  *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *accord Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015); *see also Thomas v. WMATA*, No. 25-cv-145, 2025 WL 2781481, at *3 (D. Md. Sep. 29, 2025) (applying *Scott v. Harris* in summary judgment analysis of negligence claim against WMATA bus driver).

## III.    ANALYSIS

### A.    Choice of Law

The Court will apply District of Columbia tort law "because the Court sits in the District of Columbia and the alleged tort occurred here."  *Harris v. WMATA*, 490 F. Supp. 3d 295, 308 (D.D.C. 2020) (citation modified).  Under the WMATA Compact, tort suits involving WMATA shall be decided "in accordance with the law of the applicable signatory (including rules on conflict

4

of laws)." D.C. Code § 9–1107.01(80).  "The applicable signatory is determined by the jurisdiction in which the incident arose."  *Workagegnehu v. WMATA*, 373 F. Supp. 3d 110, 118 (D.D.C. 2019) (applying Virginia law based on location of incident), *aff'd*, 980 F.3d 874 (D.C. Cir. 2020); *see Robinson v. WMATA*, 774 F.3d 33, 38 (D.C. Cir. 2014) (applying D.C. tort law based on location of incident).  Here, the incident in question took place at the intersection of Alabama Avenue and Naylor Road in the District of Columbia.  Accordingly, the Court will apply D.C. tort law.

Young nevertheless invokes Maryland tort law without explanation.  *See* Opp'n 3, Dkt. 15 (citing *WMATA v. Belle*, 632 A.2d 414, 416 (D.C. 1993)).  But *WMATA v. Belle*, 632 A.2d 414 (D.C. 1993), involved a passenger who boarded a Metrobus in Maryland and who was injured in Maryland.  *See id.* at 414–15.  The other cases on which Young relies concern incidents that occurred in the District of Columbia and apply D.C. tort law.  *See, e.g.*, *Pazmino v. WMATA*, 638 A.2d 677, 679–80 (D.C. 1994) (looking to D.C. municipal traffic regulations for incident that occurred in District of Columbia); *Grana v. Runyon*, 613 F. Supp. 3d 406, 409, 410–11 (D.D.C. 2020) (applying D.C. law to incident that occurred in District of Columbia).

**B.  Negligence**

To make a negligence claim in the District of Columbia, a plaintiff must demonstrate that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff."  *Nixon v. Ippolito*, 320 A.3d 1059, 1065 (D.C. 2024) (citation modified); *see Robinson*, 774 F.3d at 38.  WMATA contends that Young fails to establish the breach element.  *See* Mot. 5–8.

"WMATA, like any common carrier, owes a duty of reasonable care to its passengers," part of which is to "keep a lookout and to observe the movements of vehicles ahead."  *Pazmino*, 638 A.2d at 678–79 (citation modified).  "This requires all the care and caution which a bus driver of reasonable skill, foresight, and prudence could be fairly expected to exercise, and what is

5

reasonable depends upon the dangerousness of the activity involved." *Id.* (citation modified).  A plaintiff may prove a breach of this duty by presenting direct evidence of negligence (such as evidence of a driver's distraction), evidence that a driver violated an applicable standard, or circumstantial evidence of actions that "could not have been consistent with safe operation of the bus." *Robinson*, 774 F.3d at 38 (citation modified).  "WMATA is not liable for the normal jerks or jars that occur during city bus rides," *id.* at 42 (citation modified), because "a passenger on a bus assumes the ordinary risk incident to the movement of a bus over public highways, which includes the usual and ordinary jerks, jolts and stops," *Washington v. Wash., Va. & Md. Coach Co.*, 250 F. Supp. 888, 889–90 (D.D.C. 1966) (*WVM Coach*).

To prevail on her negligence claim, Young must demonstrate that "the jerk . . . was of such unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle." *Robinson*, 774 F.3d at 42 (citation modified).  "Such unusual and extraordinary force . . . cannot be inferred from mere descriptive adjectives and conclusions alone." *Id.* (citation modified).  Moreover, "[a] passenger inside the bus is not able to establish a prima facie case of negligence by merely presenting a description of movement equally consistent with proper operation of the bus." *WMATA v. Jones*, 443 A.2d 45, 50 (D.C. 1982); *see Robinson*, 774 F.3d at 43 ("[T]estimony of a sudden stop and resulting injuries does not, by itself, raise a permissible inference of negligence.").  Relevant considerations for a court considering a negligence claim include: (1) "the absence of any evidence that anyone else on the bus was affected by the [driver's actions]"; (2) whether "the movement had any unusual or extraordinary effect on [the plaintiff]"; or (3) "the presence of any other facts from which to infer negligence." *Pazmino*, 638 A.2d at 680 n.6.

Young has offered evidence sufficient to show that "reasonable jurors could find by a preponderance of the evidence that [she] is entitled to a verdict" on her negligence claim. *Anderson*, 477 U.S. at 252. The evidence before the Court—particularly the video evidence— raises a genuine dispute of material fact as to the reasonableness of the bus driver's conduct in approaching the intersection, and reasonable jurors could find that the stop here was of such "unusual and extraordinary force that it could not reasonably be said to have happened in the ordinary operation of the vehicle." *Robinson*, 774 F.3d at 42 (citation modified).

First, the video suggests a genuine dispute as to whether the bus driver's actions fell below the standard of care. From the time the bus driver pulled away from the curb towards the intersection until the moment he braked to avoid the turning truck, his view of oncoming traffic was obstructed by other buses stopped in the adjacent lane. WMATA Video 07:23:57–07:24:06 (Camera 1). Such a visual obstruction when approaching the intersection raises a genuine dispute of fact as to the reasonableness of the driver's approach into the intersection.

D.C. law provides that drivers approaching an intersection—even when they have a green light—must still approach with an amount of caution appropriate to the particular conditions. *See* D.C. Mun. Regs. tit. 18, § 2200.5 ("The driver of every vehicle shall . . . drive at an appropriate reduced speed when approaching and crossing an intersection . . . and when special hazard exists with respect to . . . other traffic."). Although the bus driver had the right of way, *see* Mot. 5–6, and thus status as the "favored driver," he remained "obliged to maintain a proper lookout while approaching and entering [the] intersection," *Elam v. Ethical Prescription Pharmacy, Inc.*, 422 A.2d 1288, 1290 (D.C. 1980) (citation modified), and "must look and see what is visible before attempting to cross [the intersection]," *Frager v. Pecot*, 327 A.2d 306, 307 (D.C. 1974) (quoting *D.C. Transit Sys., Inc. v. Harris*, 284 A.2d 277, 279 (D.C. 1971)). "[E]xcept in rare cases it is for

the jury[—]and not the court[—]to decide whether under the particular circumstances and at the particular time there was an exercise of reasonable care." *Borror v. Kissinger*, 173 A.2d 223, 224 (D.C. 1961).  Where a driver's vision of an intersection is blocked and an accident or some incidence of negligence occurs, a finding of breach is properly submitted to the jury when "reasonable persons could differ as to whether [the driver's] efforts at observation amounted to the care required of a reasonably prudent driver." *Spain v. McNeal*, 337 A.2d 507, 510 (D.C. 1975); *see id.* (reversing grant of judgment notwithstanding the verdict because the reasonableness of the driver's actions prior to an accident in intersection where their view was blocked by parked vehicles created a genuine dispute for the jury).

Considering the video, "[a] reasonable jury could have inferred that a reasonable bus driver placed in this situation would exercise particular caution, commensurate with the perils posed by such a traffic setting," *Harvey v. WMATA*, 814 F.2d 764, 767 (D.C. Cir. 1987), that is not reflected by the bus driver's acceleration into an intersection where other vehicles blocked his view of oncoming traffic that may enter the intersection.  Though the bus driver had the right of way, D.C. law still obligated him to maintain and operate the bus in a manner commensurate with the conditions at the intersection.  Whether the bus driver's actions, in the circumstances shown in the video, fall below the standard of care that a similarly situated bus driver would exercise is a "question of negligence" that is "quintessentially one for the trier of fact."  *Brandstetter v. Nat'l R.R. Passenger Corp.*, No. 86-cv-2893, 1988 WL 9560, at *1 (D.D.C. Jan. 29, 1988); *see Taylor v. District of Columbia*, 951 F. Supp. 2d 186, 198 (D.D.C. 2013) (A "question of whether there was a deviation from that standard is . . . a question for the jury."); Pl.'s SMF ¶ 6 (disputing whether the bus driver's speed was excessive under the particular circumstances at the intersection);

Opp'n 4 ("A prudent driver would have kept a proper lookout when approaching the intersection having obstructed views.").

To be sure, the truck driver's actions were likely negligent and the bus driver's reaction prevented a potentially serious collision. Where a "bus driver [is] confronted with an emergency situation which he could not have reasonably anticipated and for which he [is] not responsible," a common carrier is generally not liable for a passenger's injuries. *D.C. Transit Sys., Inc. v. Carney*, 254 A.2d 402, 404 (D.C. 1969). But if the situation requiring the abrupt stop "was created partially by the negligence of the bus driver," then the common carrier may be liable. *Id.*; *see Cross v. WMATA*, 740 A.2d 977, 979–80 (D.C. 1999) ("[E]ven if an emergency stop is necessary, the question then arises as to how the bus driver became involved in that situation. If it was created partially by the negligence of the bus driver, then the bus company would be liable." (citation modified) (quoting *Carney*, 254 A.2d at 404)); *Pazmino*, 638 A.2d at 679 (recognizing "there can be more than one proximate cause of an accident" and thus merely because another driver "may have been negligent does not mean that WMATA is free of negligence"). While the "bus driver was confronted with an emergency situation" here, a genuine dispute of material fact exists as to whether the driver could "have reasonably anticipated" the situation or was in some way responsible because of his own breach of a duty of care. *Carney*, 254 A.2d at 404. Such a scenario may provide a basis for a reasonable jury to infer negligence. *See id.*

Second, Young also describes in some detail how the stop threw her to the ground and caused injuries to multiple parts of her body. *See* Young Dep. Tr. 44:17–21, 54:20–56:13; Pl.'s Resp. Interrog. No. 8. The video evidence shows Young being flung several seats forward and hitting her head on part of the bus driver's cabin. WMATA Video 07:24:03-07:24:10 (Cameras 2, 4). The video also shows that other passengers were affected by the stop, including one

passenger who appears to hit his head on a divider in front of him. *See id.* (Cameras 2, 3, 4, 5, 7). This video evidence augments Young's testimony by showing a significant, unusual impact on herself and other passengers, providing support for Young's theory of breach. *See Pazmino*, 638 A.2d at 680–81, 680 n.6 (concluding a reasonable jury could find negligence because the plaintiff's testimony that "described the bus's movement as sudden and that all the passengers were shaken up by the stop" was supported by additional evidence showing others "on the bus [were] affected by [the stop]" and the bus's "movement had . . . unusual or extraordinary effect on [the plaintiff]").

Third, Young alleges that the bus driver apologized to her and acknowledged that he "may have been traveling too close to" the truck. Pl.'s Resp. Interrog. No. 11.[3]  Though WMATA argues this statement is hearsay, Reply 3–4, Dkt. 16, at summary judgment evidence need only be "capable of being converted into admissible evidence," *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000), which Young could ostensibly do by calling the bus driver at trial. And, because WMATA admitted the bus driver was acting "in the course and scope of his employment" at the time of the incident, Answer ¶ 3, Dkt. 7, Young's recollection of the bus driver's statement may be a statement of a party opponent, *see* Fed. R. Evid. 801(d)(2)(D). This admission by the bus driver, which has otherwise not been contradicted by WMATA, can indicate breach. *See WVM Coach*, 250 F. Supp. at 889–90, 893 (declining to vacate a jury verdict in favor of an injured passenger plaintiff because, along with plaintiff's description

---

[3] Young is inconsistent in her presentation of this statement. Her interrogatory response says the driver said that "he may have been traveling too close to the vehicle directly in his lane of travel when the incident occurred," Pl.'s Resp. Interrog. No. 11, but her Opposition and Statement of Material Facts in Dispute, citing to this same interrogatory response, claims the driver "stated that he was probably going to [sic] fast," Opp'n 5; Pl.'s SMF ¶ 8. These assertions are materially different. The Court will consider only the sworn interrogatory response that the driver said that he may have been traveling too close.

of the bus's stop and impact on the plaintiff, the bus driver recorded in an official report that he made a "'partially' sudden stop and that the bus stopped 'somewhat faster than normal'").

In sum, when "viewed in the light most favorable to [Young]," *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation modified), and with all "reasonable inferences" drawn in Young's favor, *Reeves*, 530 U.S. at 150, the video, Young's testimony about the incident, and Young's testimony regarding statements of the bus driver after the incident present more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, of a genuine dispute as to whether the bus driver may have breached the relevant standard of care and whether this breach proximately caused Young's injuries. What exactly a reasonable driver would have done under these circumstances is a factual question that is inappropriate for resolution on summary judgment with this record. Because a jury, considering this evidence, could "reasonably find for [Young]," *id.*, WMATA is not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, WMATA's Motion for Summary Judgment, Dkt. 14, is denied. A separate order consistent with this decision accompanies this Memorandum Opinion.

DABNEY L. FRIEDRICH
United States District Judge

July 14, 2026

11